UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jose Esteban Mayancela
Mayancela

    v.                                                Civil No. 25-cv-348-LM-TSM
                                                    Opinion No. 2025 DNH 135 P

FCI Berlin, Warden et al

**O R D E R**

Jose Esteban Mayancela Mayancela petitions for a writ of habeas corpus under 28 U.S.C. § 2241. His primary contention is that the immigration judge ("IJ") that conducted his custody redetermination hearing under 8 U.S.C. § 1226(a) failed to apply the constitutionally mandated standard of proof. See Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021). Respondents object, largely on the basis that this court lacks jurisdiction to review the IJ's order under § 1226(e). The court finds that § 1226(e) does not preclude review of Mayancela's petition, but that the IJ did not violate Mayancela's due process rights in finding by a preponderance of the evidence that he posed a flight risk that could not be ameliorated by any combination of release conditions. Therefore, Mayancela's petition (doc. no. 1) is denied.

**STANDARD OF REVIEW**

This court may grant a writ of habeas corpus to a person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The petition "may be resolved on the merits without [an evidentiary]

hearing when, as here, the material facts are not in dispute." Cummings v. Fed. Corr. Inst., Berlin, Civ. No. 22-cv-468-SM-AJ, 2024 WL 1256068, at *1 (D.N.H. Mar. 25, 2024). The petitioner has the burden of proving that his confinement is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009).

## BACKGROUND[1]

Mayancela, a citizen of Ecuador, entered the United States unlawfully in 2014 or 2015. Since that time, he has lived in Brockton, Massachusetts, where he has a wife, daughter, and friends. Mayancela has also worked and paid taxes, though an on-the-job accident in 2024 left him badly injured, requiring him to apply for worker's compensation benefits.

Mayancela has been charged with several driving-related offenses. In 2015, he was charged in Brockton District Court with unlicensed operation of a motor vehicle and with willfully obstructing an emergency vehicle. See doc. no. 1-1 at 59. At his arraignment on those charges, he was found "not responsible" for the obstruction charge, and the operation charge was continued for payment of a fine and dismissal. Id. at 60. Mayancela paid a $150 fine and the operation charge was later dismissed. Id. at 59-60. Then, in 2018, he was once again charged with unlicensed operation of a motor vehicle as well as a lane violation in Brockton District Court. Id. at 61. At arraignment, he was again found not responsible for the

---

[1] The following facts are drawn from Mayancela's petition and the attachments thereto. All facts recited herein were available to the IJ at the time of the bond hearing. See doc. no. 1 at 1 n.1; see also doc. no. 1-1 at 31.

2

lane violation, and the operation charge was dismissed after Mayancela paid a $100 fine. Id. at 61-62. In December 2019, Mayancela was once more charged with several driving-related offenses in Brockton District Court: operating with a suspended license, operating with a suspended registration, and driving without insurance. See id. at 56. These charges were also dismissed. See id. Finally, in June 2024, Mayancela was charged in Greenfield District Court with operating with a suspended license, driving without insurance, and an additional traffic offense. See id. at 55. Mayancela failed to appear for a hearing on July 15, 2024 and was defaulted. See id.

Mayancela has been in removal proceedings since 2018. An IJ denied his requests for relief from removal and ordered him removed in March 2020. Mayancela timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), but the BIA did not issue a briefing schedule until 2022. Mayancela's appeal to the BIA has been fully briefed and ripe for resolution since May 2022. The BIA has yet to act on Mayancela's appeal.

On March 27, 2025, Border Patrol Agent Jonathan Lemay saw a white van speeding in Rangely, Maine. After the van parked near a boat launch, Agent Lemay approached the vehicle to speak to the occupants. He saw seven people unloading gear out of the back of the van, one of whom was Mayancela. When the occupants saw Agent Lemay, they all ran off in different directions.

Agent Lemay called for backup. After agents surrounded the area, they were able to locate all seven of the van's occupants, including Mayancela. When asked if

he was in the country legally, Mayancela told Agent Lemay he was "in the process" and that he had a lawyer. Doc. no. 1-1 at 53. Agent Lemay placed Mayancela under arrest.

Mayancela thereafter sought and received a bond hearing before an IJ pursuant to 8 U.S.C. § 1226(a).[2] The IJ had before her evidence of Mayancela's continuous residence in Massachusetts since 2014 or 2015, his family and community ties in Brockton, his work history, letters of support from family and community members, documents relating to Mayancela's worker's compensation claim and tax history, and the record of Mayancela's removal proceedings. The IJ also had the aforementioned evidence of Mayancela's series of driving-related offenses, his failure to appear in Greenfield District Court and a resultant entry of default on multiple criminal charges, and his flight when encountered by Agent Lemay at the time of his arrest.

---

[2] At the time of Mayancela's bond hearing in April 2025, the parties and the IJ understood that the IJ had authority to consider Mayancela's release under § 1226(a) and its implementing regulations. See doc. no. 1-1 at 31-32. However, in September 2025, the BIA issued a precedential decision holding that all noncitizens that enter the country unlawfully are categorically ineligible to be released on bond under § 1226(a) "for the duration of their removal proceedings" because they are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Matter of Yajure Hurtado, 29 I. & N. Dec. 216, 220 (BIA 2025). This court has rejected Yajure Hurtado's reasoning, as has virtually every other court to have considered the issue. See Jimenez v. FCI Berlin, Warden, --- F. Supp. 3d ----, 2025 WL 2639390, at *7-10 & n.9 (D.N.H. 2025); Rodriguez v. Bostock, --- F. Supp. 3d ----, 2025 WL 2782499, at *1 n.3 (W.D. Wash. 2025) (collecting cases).

Ultimately, the IJ issued a written memorandum of decision concluding that the Department of Homeland Security ("DHS") failed to prove by clear and convincing evidence that Mayancela's release would pose a danger to the community. However, the IJ found that DHS had proven by a preponderance of the evidence that Mayancela posed a flight risk that could not be ameliorated by any conditions or bond amount.

The IJ recognized the "significant factors" ordinarily relevant to a determination of whether a detainee poses a flight risk:

> [T]he respondent's length of residence in the United States; whether the respondent has a fixed address in the United States; the respondent's family ties in the United States, particularly those which could confer immigration benefits on the respondent; the respondent's employment history; the respondent's criminal and immigration records; whether the respondent is eligible for relief from removal; any previous attempts to escape from authorities or avoid prosecution; and any prior failures to appear for court proceedings.

Id. at 31-32 (citing Matter of Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006), abrogated on other grounds by Hernandez-Lara, 10 F.4th at 41). In finding by a preponderance of the evidence that Mayancela posed a flight risk, the IJ gave significant weight to the 2020 removal order. She reasoned that, "because [Mayancela] has been ordered removed, he does not have an incentive to appear at future hearings before the [Immigration] Court where his removal order may be upheld or executed." Id. at 32. And, while the IJ recognized that the removal order

5

was on appeal to the BIA, she found the possibility of Mayancela prevailing on appeal to be "speculative." Id.

Although the IJ's memorandum of decision did not specifically discuss how she weighed the evidence regarding Mayancela's failure to appear in Greenfield District Court and his flight upon being encountered by Agent Lemay, her order made clear that she "reviewed the record in its entirety and [was] familiar with all submissions and evidence." Id. at 31. And, while she did not specifically discuss each piece of evidence submitted, she stated that "[f]ull consideration and appropriate weight have been given to all admitted exhibits and evidence regardless of whether specifically summarized or referenced herein." Id.

The IJ gave weight to Mayancela's evidence. She noted that he has lived in the United States for over ten years, that he has diligently pursued relief from removal, that he maintained steady employment until his work-related injury, that he had several letters from family and friends attesting to his good character, and that he attended all court hearings with respect to his 2015 and 2018 driving charges. The IJ nevertheless found, "[b]ased on the totality of the circumstances" before her, "[t]hat DHS met its burden to show by a preponderance of the evidence that [Mayancela] poses a flight risk which cannot be ameliorated by any conditions of release or bond amount." Id. at 32. Because she so found, she did not order Mayancela's release on bond or conditional parole.

Mayancela filed the instant habeas petition in this court on September 14, 2025, approximately three months after issuance of the IJ's memorandum explaining her bond denial decision.[3] The petition brings four counts:

- In Count I, Mayancela contends that the IJ's bond denial violates his due process rights because "[t]he facts as found by the [IJ] are incompatible with a finding of flight risk by a preponderance of the evidence." Doc. no. 1 at 7. Essentially, he argues that the IJ failed to apply the standard of review mandated by due process. See id. at 6 ("While the [Executive Office of Immigration Review] has the authority to find facts and exercise discretion, it is still bound to apply legal and constitutional standards.").

- In Count II, Mayancela claims that he has been subjected to prolonged detention without a showing from the government that he is dangerous or a flight risk, in violation of his due process rights. See Zadvydas v. Davis, 533 U.S. 678 (2001).

- In Count III, he contends that he is entitled to a bond hearing under § 1226(a) despite the fact that he entered the country unlawfully.

- In Count IV, Mayancela asserts that his detention violates his due process rights because it does not serve the purpose of ensuring attendance at removal proceedings or protecting the community.

---

[3] Prior to filing this habeas petition, Mayancela also appealed the IJ's bond denial to the BIA. At the time he filed his habeas petition, the BIA had not acted on his appeal. However, on September 18, 2025, the BIA dismissed Mayancela's bond appeal pursuant to Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025). See doc. no. 5-1 at 3. His appeal of the 2020 removal order remains pending before the BIA.

**DISCUSSION**

The court's discussion proceeds as follows. First, the court will set forth some applicable legal principles governing its analysis. Second, the court will address respondents' jurisdictional argument. Third, the court will address Count I of Mayancela's petition on the merits. Finally, the court will briefly address Mayancela's remaining claims.

I.     Applicable Legal Principles

A noncitizen who is "in the country" may be detained during the pendency of removal proceedings pursuant to § 1226. Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). Unless ineligible for release under § 1226(c), DHS has the authority to release noncitizens facing removal proceedings on "bond of at least $1,500" or "conditional parole." 8 U.S.C. § 1226(a)(2); see id. § 1226(c) (requiring detention for noncitizens that have committed specified criminal offenses). Alternatively, DHS may elect to detain the noncitizen pending the outcome of removal proceedings. Id. § 1226(a).

"An Immigration and Customs Enforcement ('ICE') officer makes the initial detention determination for noncitizens subject to detention under section 1226(a)." Hernandez-Lara, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(c)(8)). Section 1226's implementing regulations provide that, if the noncitizen disagrees with the officer's detention decision, he may appeal that decision to an IJ, who may then "exercise the authority" in § 1226(a) to detain or release the noncitizen "and determine the amount of bond, if any, under which the [noncitizen] may be released." 8 C.F.R.

§ 236.1(d)(1). Either party may appeal the IJ's bond determination to the BIA. Id. § 236.1(d)(3). But the BIA's ruling may not be further appealed to the relevant Court of Appeals. Romero v. Hyde, --- F. Supp. 3d ----, 2025 WL 2403827, at *6 (D. Mass. 2025). Instead, a petition for a writ of habeas corpus, filed in the appropriate district court, is the only mechanism by which a noncitizen may seek judicial review of an IJ's bond decision.[4] Gudiel Polanco v. Garland, 839 F. App'x 804, 805 (4th Cir. 2021) (per curiam); Ben Halim v. Ashcroft, 107 F. App'x 1, 6 (7th Cir. 2004); see also Fed. R. App. P. 22(a) ("An application for a writ of habeas corpus must be made to the appropriate district court.").

"Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden." Hernandez-Lara, 10 F.4th at 26. In Hernandez-Lara, the First Circuit held that, to detain a noncitizen under § 1226(a), "due process requires the government to either (1) prove by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove by a preponderance of the evidence that [the noncitizen] poses a flight risk." Id. at 41. In Count I of his habeas petition, Mayancela claims that his detention is unlawful because the IJ who conducted his bond hearing failed to apply this constitutionally mandated standard.

Respondents contend that § 1226(e) deprives this court of jurisdiction to review Mayancela's claim. The court will consider respondents' contention now.

---

[4] If the district court denies the noncitizen's habeas petition, the noncitizen may then appeal that denial to the relevant Court of Appeals. Fed. R. App. P. 22(a).

II.    Section 1226(e) Does Not Deprive This Court of Jurisdiction to Review Count I of Mayancela's Petition

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review," and that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). Section 1226(e) only bars "review of the Attorney General's discretionary judgment." Saint Fort v. Ashcroft, 329 F.3d 191, 200 (1st Cir. 2003). It does not eliminate "habeas jurisdiction over constitutional claims or questions of law." Hernandez v. Sessions, 872 F.3d 976, 987 (9th Cir. 2017) (quoting Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)). Thus, under § 1226(e), "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only 'where that bond denial is challenged as legally erroneous or unconstitutional.'" Diaz-Calderon v. Barr, 535 F. Supp. 3d 669, 676 (E.D. Mich. 2020) (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 772-73 (N.D. Cal. 2019)); see also, e.g., Massingue v. Streeter, No. 3:19-cv-30159-KAR, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020) (explaining that § 1226(e) does not bar review of "whether the petitioner received the constitutional due process to which he was entitled" (brackets omitted) (quoting Hechavarria v. Whitaker, 358 F. Supp. 3d 227 (W.D.N.Y. 2019))).

Section 1226(e) does not bar review of Mayancela's claim. Although the court may not review the IJ's discretionary judgment, the IJ does not have discretion to fail to apply the burden of proof that due process requires. See R.I.L-R v. Johnson,

10

80 F. Supp. 3d 164, 176 (D.D.C. 2015) ("[I]t is not within DHS's discretion to decide whether it will be bound by the law." (quotation omitted)). Because Mayancela claims that the IJ failed to apply the constitutionally mandated burden of proof, this court has jurisdiction to consider Mayancela's claim.[5]

III. Mayancela Has Not Demonstrated That the IJ Failed to Apply the Correct Standard of Review

While this court has authority to consider Mayancela's claim, that authority is "limited." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 143 (D. Mass. 2019). To obtain habeas relief, Mayancela must show that the IJ "failed to place the burden of proof on the Government" to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. Id. "To make this showing, he can either point to the language of the [IJ's] opinion or demonstrate that 'the evidence itself could not – as a matter of law – have supported' the [IJ's] decision to deny bond." Id. (quoting Hechavarria, 358 S. Supp. 3d at 240); accord, e.g., Massingue, 2020 WL 1866255, at *4; Diaz-Calderon, 535 F. Supp. 3d at 676;

---

[5] Mayancela does not argue in the alternative that, even if the IJ applied the correct legal standard, she erred in applying the law to find (on these facts) that he posed a flight risk. Thus, the court does not consider whether § 1226(e) would bar review of such a claim. But see Wilkinson v. Garland, 601 U.S. 209, 212 (2024) (holding that "[t]he application of a statutory legal standard . . . to an established set of facts" presents a question of law reviewable under 8 U.S.C. § 1252(a)(2)(D)); Martinez v. Clark, 124 F.4th 775, 779-80 (9th Cir. 2024) (applying Wilkinson to conclude that an IJ's finding of dangerousness presents a question of law subject to abuse-of-discretion judicial review despite § 1226(e)); Samayoa v. Bondi, 146 F.4th 128, 136 & n.4 (1st Cir. 2025) (explaining that, while Wilkinson held that judicial review of fact-laden questions of law answered by IJs should be "deferential," it left open the precise standard of review, and "different deferential standards of review exist out there").

Rubio-Suarez v. Hodgson, Civ. No. 20-10491-PBS, 2020 WL 1905326, at *2-3 (D. Mass. Apr. 17, 2020).

Mayancela has not made this showing. The IJ's memorandum of decision demonstrates that she understood she possessed discretion to order Mayancela's release pursuant to § 1226(a). See doc. no. 1-1 at 31. The IJ also recognized that, to deny bond, "DHS must prove by clear and convincing evidence that the [noncitizen] poses a danger to the community or prove by a preponderance of the evidence that the respondent poses a flight risk." Id. (citing Hernandez-Lara, 10 F.4th at 41). She also pointed out factors typically significant in determining dangerousness and flight risk, such as the person's ties to the community, employment history, criminal records, and any history of flight from law enforcement or past failures to appear for court proceedings. Id. at 31-32. Thus, this is not a circumstance in which it is "clear from the [IJ's] opinion itself that [she] simply did not apply the correct standard to the facts." Massingue, 2020 WL 1866255, at *4 (quoting Hechavarria, 358 F. Supp. 3d at 240).

Resisting this conclusion, Mayancela contends that the IJ necessarily failed to apply the correct burden of proof because she did not sufficiently explain her reasoning. Mayancela is correct that IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions. Barnica-Lopez v. Garland, 59 F.4th 520, 530 (1st Cir. 2023). However, the IJ "need not discuss ad nauseam every piece of evidence." Id. (quoting Pan v. Gonzales, 489 F.3d 80, 87 (1st Cir. 2007)). Thus, an IJ "need not spell out every last detail of [her] reasoning where

12

the logical underpinnings are clear from the record." López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025) (quoting Rivera-Medrano v. Garland, 47 F.4th 29, 39 (1st Cir. 2022)).

The logical underpinnings of the IJ's reasoning are clear from her written memorandum of decision. The IJ gave great weight to the removal order and the speculative prospect that Mayancela might obtain relief from removal from the BIA. In addition, while she did not explicitly discuss Mayancela's series of driving charges, his failure to appear in Greenfield District Court in July 2024, or his flight from Agent Lemay, the IJ made clear that she had reviewed the record, was aware of the parties' submissions, and gave those submissions "appropriate weight . . . regardless of whether specifically summarized or referenced" in her memorandum. Doc. no. 1-1 at 31. Finally, the IJ acknowledged and gave weight to Mayancela's evidence, including his ties to Massachusetts, a history of steady employment, and that he had appeared for all hearings in connection with his 2015 and 2018 driving charges. Ultimately, "[b]ased on the totality of the circumstances," the IJ "found that DHS met its burden to show by a preponderance of the evidence that [Mayancela] poses a flight risk which cannot be ameliorated by any conditions of release or bond amount." Id. at 32. Contrary to Mayancela's assertions before this court, the IJ's written memorandum of decision is not so devoid of reasoning that it is "impossible to determine if the [IJ] applied any standard at all." Doc. no. 8 at 11. That Mayancela disagrees with the IJ's application of the preponderance-of-the-evidence standard does not show that the IJ failed to apply it.

Moreover, based on the totality of the evidence before the IJ, a reasonable jurist could have concluded by a preponderance of the evidence that Mayancela posed a flight risk. As the IJ recognized, significant considerations in evaluating flight risk include prior instances of missed court dates, a history of flight, and records of any criminal or immigration proceedings. The evidence available to the IJ showed that Mayancela failed to appear for a hearing on criminal offenses in Greenfield District Court in July 2024 and that he has been charged with numerous driving offenses since 2014. Moreover, immediately prior to his arrest and current detention, he attempted to flee from a CBP agent. And, as the IJ highlighted, Mayancela has been ordered removed from the United States and thus has an incentive not to appear for future proceedings at which his removal order could be effectuated or upheld. Mayancela therefore fails to "demonstrate that 'the evidence itself could not – as a matter of law – have supported' the [IJ's]decision to deny bond." Diaz Ortiz, 384 F. Supp. 3d at 143 (quoting Hechavarria, 358 F. Supp. 3d at 240).

For these reasons, Mayancela has not demonstrated that the IJ failed to apply the correct standard of review.

IV.    Mayancela's Remaining Claims Fail

In Count II of his habeas petition, Mayancela contends that his detention has become unreasonably prolonged in violation of his due process rights. However, even assuming that Mayancela's detention has become unreasonably prolonged, "[t]he remedy for a prolonged detention is a bond hearing before an immigration

14

judge at which the government bears the burden of proving that the [noncitizen] should not be released on bond." Fils-Aime v. FCI Berlin, Warden, --- F. Supp. 3d ----, 2025 WL 3063164, at *5 (D.N.H. 2025) (brackets omitted) (quoting Smorodska v. Strafford Cnty. Dep't of Corr., Civ. No. 20-cv-446-JL, doc. no. 31 at 3 (D.N.H. May 14, 2020)). Mayancela received such a hearing, and he has failed to demonstrate that the IJ did not apply the standard of review mandated by Hernandez-Lara. Therefore, Count II fails.

In Count III, Mayancela contends that the BIA's decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), was wrongly decided and he is entitled to a bond hearing under § 1226(a) despite the fact that he is an "applicant for admission." But again, Mayancela received a bond hearing under § 1226(a). So, Count III fails as well.

Finally, Count IV of Mayancela's petition is entitled "Violation of Fifth Amendment Right to Due Process." Doc. no. 1 at 8. The nature of Mayancela's claim is unclear. He asserts that "[c]ivil detention is constitutionally permissible only so long as it serves the narrow purpose of ensuring attendance at removal proceedings or protecting the community," and that, "[w]here the government fails to meet its burden and detention has become prolonged, continued confinement violates due process." Id. at 9. He further contends that, "[b]ecause Respondents cannot demonstrate that [he] is a danger or a flight risk under the standards set forth in Hernandez-Lara, [he] is entitled to immediate release under reasonable conditions of supervision pursuant to 8 U.S.C. § 1226(a)." Id. The court does not understand

Count IV to assert a claim for relief that differs from the failure-to-apply-burden-of-proof claim in Count I or the unreasonably-prolonged-detention claim in Count II. As both of those counts fail, Count IV does as well.

## CONCLUSION

Mayancela's petition for a writ of habeas corpus (doc. no. 1) is denied. The clerk is directed to enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

November 18, 2025

cc:   Counsel of Record